UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| ESMER W. AHLSTROM, JR. | CIVIL ACTION NO. 05-1254 |
| VS. | SECTION P |
| RICHARD STALDER | JUDGE MINALDI |
| | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. § 1983) filed *in forma pauperis* by *pro se* plaintiff Esmer W. Ahlstrom, Jr. on July 7, 2005. Plaintiff is currently incarcerated at C. Paul Phelps Correctional Center (CPP), in DeQuincy, Louisiana. Plaintiff complains that he was denied his free exercise of religion and names Department of Corrections Secretary Richard Stalder as his defendant herein.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## STATEMENT OF THE CASE

Plaintiff alleges CPP's Adult Sex Offender Treatment Program ("the program") violates his religious beliefs as the program omits God from its contents. More specifically, plaintiff states that if the program became mandatory such that he would be required to attend, he would be forced to sacrifice his beliefs. Plaintiff also claims that he would have to facilitate the program after completing same, which would require him to give others information which he deems false, such as that there is no cure for sex offenders. Plaintiff contends that this action would prevent him from freely practicing his Christian religion.

Plaintiff also alleges that because he has refused to participate in the program, he is denied participation in other prison programs which would provide extra privileges. Plaintiff states that less restrictive alternatives, such as the 12 Step Alcoholics Anonymous program, are available but just not considered by CPP. Plaintiff provided documentation that he exhausted the available Administrative Remedy Procedure.[1]

As a result of the alleged constitutional violation, plaintiff seeks a finding by the court that his coerced or mandatory participation in the program would be unconstitutional and would cause him to supplant his religious beliefs, and that the program is obscene in content. Plaintiff also prays that the court order the Louisiana Department of Public Safety and Corrections to provide an alternative to the program in keeping with his religious beliefs. Finally, plaintiff seeks reimbursement of all fees and costs associated with the case.

## LAW AND ANALYSIS

### 1. Frivolity Review

When a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obliged to evaluate the complaint and dismiss it without

---

[1] On or about October 9, 2000, plaintiff filed ARP #00-0626 based upon the same allegations contained in his present complaint. Plaintiff received a third step response to the ARP on July 31, 2001, which denied his request based on the fact that the program was not mandatory and that it did not violate his religious freedom. At this point, the procedural history in this matter gets somewhat convoluted as plaintiff actually filed a Petition for Judicial Review seeking a response to his ARP prior to receiving the third step response. Defendant Stalder filed an answer to the suit, and according to plaintiff, no further action was taken by the court, despite status requests by plaintiff. Thus, plaintiff filed a Writ of Mandamus in January 2004, seeking a ruling on his Petition for Judicial Review. Plaintiff filed a request for status concerning his mandamus action on March 15, 2005. Thereafter, the First Circuit Court of Appeals informed plaintiff that his writ application had been rejected in February 2004, because it did not contain the required filing fee, affidavits, or documents. The court stated that the writ was being returned to plaintiff with the requirement that he include the required payment.

service of process, if it is frivolous,[2] malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C.1915A; 28 U.S.C.1915(e)(2); *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C.1997e(c)(1). A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). District courts must construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under § 1915(e)(2)(B), but are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994). A complaint may not be dismissed under § 1915(d)(2)(B) "simply because the court finds the plaintiff's allegations unlikely." *Jolly v. Klein*, 923 F.Supp. 931, 942-43 (S.D.Tex.1996).

A civil rights plaintiff must support his claim(s) with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97. With these standards in mind, the court has evaluated the substantive claims asserted by the plaintiff. The court finds that plaintiff's complaint specifically details his theory of liability, and the thoroughness of the complaint convinces the

---

[2] A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

3

court that plaintiff need not be afforded the opportunity to amend. Accepting all of plaintiff's allegations as true, and giving plaintiff the benefit of every doubt, the court concludes, for the reasons stated herein, that his claims should be dismissed.

2. First Amendment Claim

In his First Amendment claim, plaintiff contends that his participation in the Sex Offender Program would require him to sacrifice his religious beliefs and prevent him from the free practice of his Christian faith. First of all, the court notes that nothing in plaintiff's complaint indicates that the program is mandatory at CPP[3]. To the contrary, plaintiff's claims are premised on the speculation that the program will become mandatory, and upon plaintiff's hypothetical participation in same. Nevertheless, even if plaintiff's participation in the program were mandatory, his allegations would fail to state a claim for which relief may be granted. Inmates such as plaintiff retain the protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Of course, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including institutional security. See *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated

---

[3] In addition, the various responses to plaintiff's ARP state that the program is not mandatory.

4

based upon the following inquiry:

> (1) Is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward by prison officials to justify the regulation?
>
> (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level?
>
> (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally?
>
> (4) Are alternatives to the prison regulation available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests?

*Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000) (internal quotations and citations omitted); see also *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992). While not factually identical,[4] the basic analysis in *O'Lone v. Estate of Shabazz, supra*, is certainly applicable to the present case. Like the plaintiffs in *Shabazz*, this plaintiff has not, nor can he show that he has been deprived of <u>all</u> means of religious expression. In fact, plaintiff has not been denied his right to worship at all. Along these lines, the court finds the well-reasoned analysis in *Searcy v. Simmons*, 299 F.3d 1220 (10th Cir. 2002), applicable to the present case. In *Searcy,* the plaintiff-inmate brought a § 1983 action challenging a reduction in privileges following his refusal to participate in a sexual abuse treatment program. Specifically, the plaintiff alleged that punishing him for refusing to follow the program's requirement that a participant sign a form accepting

---

[4] In that case, the inmate-plaintiffs complained that they were not allowed to attend the weekly Muslim congregational service held on Friday evenings because of their assignments to work details outside the main prison grounds. *Id.*, at 345-46. The court noted that the plaintiff-inmates were not deprived of <u>all</u> forms of religious exercise. Thus, the Supreme Court held that the "ability on the part of [the inmates] to participate in other religious observances of their faith supports the conclusion that the restrictions at issue here were reasonable." *Id.* at 352.

5

responsibility for the crime for which they had been sentenced, violated his right of free exercise

of religion as he did not commit the crime. Thus, plaintiff argued that signing such a document

would constitute lying–an action in contradiction to his religious principles. The court, however,

did not find the plaintiff's argument persuasive. Rather, it determined that because the program

was voluntary, plaintiff could not support his claim that he was forced to act in a manner in

conflict with his religious beliefs. Using the Supreme Court's analysis in *Shabazz,* the court also

found that the requirement for an admission of responsibility was a reasonable regulation that

was not violative of the First Amendment. *Searcy,* at 1228. In this regard, the court stated:

> Mr. Searcy is free to adhere to his religion's proscription against lying, in doing so, however, he loses certain privileges he would have received had he complied fully with the requirements for the sexual abuse treatment program. This does not present an infringement of Mr. Searcy's constitutional right to free exercise of religion. This is especially so because the requirement of admission of responsibility is generally applicable to all inmates in the SATP and is not pointed an any particular religion or religious belief. See *Employment Div. V. Smith,* 494 U.S. 872, 879, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (holding that neutral laws of general applicability that proscribe or require conduct contrary to religious belief do not violate Free Exercise Clause). *Searcy,* at 1228.

Further, in the present case, there is no question but that the State's interest in

rehabilitating sex offenders is a valid one, making CPP's treatment program reasonably related to

legitimate penological interests. Thus, even if the program did impinge upon plaintiff's right to

exercise his religious beliefs, the reasonableness of same relative to the rehabilitation process

would render the program valid. *Searcy,* at 1228.

In short, plaintiff has failed to demonstrate that his First Amendment free-exercise right

has been violated. First, the plaintiff has sufficient avenues to pursue his religious exercises.

Secondly, even if the program impinged upon plaintiff's First Amendment constitutional right to

6

free exercise of religion, the fact that the program is reasonably related to a valid penological interest (rehabilitation of prisoners) would nevertheless render plaintiff's claims unsupportable[5]. Therefore, the court concludes that plaintiff's complaint is frivolous.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 10th day of November, 2005.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

---

[5] "[T]he loss of [plaintiff's] absolute freedom of religious expression is but one sacrifice required by [his] incarceration...." *Scott v. Mississippi Dep't of Corrections*, 961 F.2d at 82.